WELCH, J.
The defendant, Harrison Edmond Hogan, appeals the trial court's grant of a protective order against him pursuant to the Protection for Victims of Sexual Assault Act, La. R.S. 46:2181, et seq. , filed by the plaintiff, Shavondara Shaketa Scott. For the following reasons, we recall and vacate the protective order and remand the matter to the trial court for further proceedings consistent with this opinion.
FACTUAL BACKGROUND
Plaintiff initiated this suit on June 8, 2017, by filing a verified petition for protection from stalking or sexual assault, pursuant to La. R.S. 46:2171, et seq. (Protection from Stalking Act) or La. R.S. 46:2181, et seq. (Protection for Victims of Sexual Assault Act). Therein, Plaintiff sought a protective order for herself against her ex-coworker, the defendant. In her petition, Plaintiff alleged that Defendant harassed, stalked, harmed or threatened to harm her, was an uninvited presence at her workplace, and had mail sent to her residence, addressed to himself. During all material times, Plaintiff was the Community Team Manager at Midcity Gardens on North Boulevard for Latter and Blum Property Management. Plaintiff alleged that Defendant was fired by their mutual employer in the early part of 2017, and Plaintiff became concerned that Defendant blamed her for his termination. Defendant was escorted off the premises and instructed not to return. However, she claimed that Defendant continued to drive by and trespass on the property on multiple *27 occasions. Plaintiff further alleged that Defendant had mail sent to her residence by a third party that was addressed to him, which caused her to feel threatened and fear for her safety, since this presumably meant that Defendant knew where she lived. As a result, a temporary restraining order ("TRO") was issued by the trial court on June 8, 2017, pursuant to " La. R.S. 46:2181 et seq. (Non-intimate sexual assault)," with a show-cause hearing scheduled for June 28, 2017, to determine whether a protective order should be issued. Defendant was served with the TRO on June 15, 2017. Defendant did not file any opposition to Plaintiff's petition for protection.
The protective order hearing occurred on June 28, 2017, before the trial court. The minute entry and transcript from the hearing reflect that Defendant was not present in the courtroom when the docket was called at 9:30 a.m. The trial court stated: "he's been served and is aware of this. If he does not show up, it is my intention simply to go forward without him." The trial court instructed court personnel to call for Defendant out in the hall; however, no one responded. The trial court then began the hearing.
Plaintiff testified at the hearing. Following the hearing, the trial court signed the order of protection pursuant to the Protection for Victims of Sexual Assault Act, " La. R.S. 46:2181 et seq. (Non-intimate sexual assault)." The protective order, made effective through June 28, 2018 (including some provisions that do not expire), prohibited Defendant from:
• abusing, harassing, assaulting, stalking, following, tracking, monitoring, or threatening Plaintiff in any manner whatsoever;
• contacting Plaintiff or any of her family members or acquaintances personally, electronically, by phone, in writing, through a third party, or via public posting, without the express written permission of the trial court;
• going within 100 yards of Plaintiff's person or residence;
• going to or interfering with Plaintiff's place or employment in any manner whatsoever; and,
• damaging or interfering with any belongings or property of Plaintiff, including shutting off any utilities, telephone service, or mail delivery.[1]
Thereafter, the hearing concluded at 9:45 a.m. The minute entry reflects that Defendant then appeared in court at 9:50 a.m., after the hearing was concluded and after the trial court judge had left the bench. The parties were served in open court with a copy of the protective order.
On July 11, 2017, Defendant filed a motion for new trial from the protective order granted against him on June 28, 2017,[2] which the trial court denied as untimely pursuant to La. C.C.P. art. 1974.[3] On August *28 2, 2017, Defendant filed a motion to modify or dissolve Plaintiff's protective order, which the trial court also denied. Defendant now devolutively appeals the protective order granted on June 28, 2017.
MOTION TO SUPPLEMENT THE RECORD
Defendant has filed a "motion for leave to attach exhibits," which may be treated as a motion to supplement the appeal record.[4] It is well-settled Louisiana law that "[e]very pleading shall be construed as to do substantial justice." La. C.C.P. art. 865.
Defendant seeks to supplement the appellate record with three "exhibits": (1) a photocopy of the mail received by Plaintiff at her residence that was addressed to Defendant; (2) a copy of the Baton Rouge Police Department ("BRPD") Incident Report Number 17-00036527-000 dated April 10, 2017 (which notes that the officer could not locate a prior report where Defendant was banned from the premises at issue); and, (3) a printed-out docket report from the East Baton Rouge Parish Clerk of Court's Office website for Docket Number C658575, which shows that the minute entry from the June 28, 2017 hearing was amended to indicate that court started at 9:30 a.m., not 9:00 a.m., as set forth in the original minute entry.
As an appellate court, we have no jurisdiction to review evidence that is not in the record on appeal, and we cannot receive new evidence. Niemann v. Crosby Dev. Co., 2011-1337 (La. App. 1st Cir. 5/3/12), 92 So.3d 1039, 1044. An appellate court must render its judgment upon the record on appeal, i.e., that which is sent by the lower court to the appellate court and includes the pleadings, court minutes, transcripts, jury instructions (if applicable), judgments, and other rulings, unless otherwise designated. See La. C.C.P. arts. 2164 and 2127 - 2128. The trial court has jurisdiction to correct an omission from the trial record on appeal. An appellate court can neither supplement the record nor consider documents on appeal that were not introduced or filed into the record during the proceedings below. See La. C.C.P. arts. 2088(4) and 2132 ; Strawn v. Superfresh, 98-1624 (La. App. 1st Cir. 9/24/99), 757 So.2d 686, 688 n.2.
Exhibits 1 and 2 referenced in Defendant's motion are already a part of the appeal record; therefore, the request to attach these duplicative exhibits is moot. Exhibit 3 referenced in Defendant's motion is not part of the appeal record and may not be considered by this court. We note, however, that the substance of the court minutes reflected in proposed Exhibit 3, upon which Defendant relies, is contained in the appeal record. Accordingly, Defendant's motion to supplement the appellate record is denied.
ASSIGNMENTS OF ERROR
Defendant assigns the following as error on appeal:
1. The trial court erred when it granted the [ex parte ] protective order and permanent injunction from *29 abuse absent a showing of immediate and present danger of abuse.
2. The trial court erred when it granted the [ex parte ] protective order and permanent injunction from abuse absent a showing of proof by a preponderance of the evidence[.]
3. The trial court erred when it granted the [ex parte ] protective order and permanent injunction against sexual abuse stalking absent clear evidence of a criminal violation and absent a reasonable basis that would cause a reasonable person to be in fear because petitioner received mail delivered by the U.S. Post Office with defendant's name on it at the exact address in which defendant previously resided which did not fall within the ambit of the Domestic Abuse Assistance Statute.
4. The trial court erred when it subsequently amended the trial court minute entry reflecting a different time that the court hearings began raising reasonable suspicion enough to imply such impropriety that prejudiced the defendant's right to a hearing.
LAW
Plaintiff petitioned the trial court for an order of protection from stalking or sexual assault, pursuant to La. R.S. 46:2171, et seq. or La. R.S. 46:2181, et seq. First, the injunction and protective order provisions set forth in La. R.S. 46:2127, et seq. of the Revised Statutes comprise Chapter 28-C of Title 46, known as the "Protection from Stalking Act." This Act is intended to provide a civil remedy for victims of stalking that will afford the victim immediate and easily accessible protection due to the:
present and growing need to develop innovative strategies and services which will reduce and treat the trauma of stranger and acquaintance stalking. The nature of stalking allegations are sometimes not easily substantiated to meet the prosecution's burden of proving the case beyond a reasonable doubt, and victims of stalking are left without protection. Orders of protection are a proven deterrent that can protect victims of stalking from further victimization; however, many victims are forced to pursue civil orders of protection through ordinary process, often unrepresented, rather than through a shortened, summary proceeding. Additionally, victims of stalking are not always aware of the vast resources available to assist them in recovering from the trauma associated with being a victim of stalking.
La. R.S. 46:2171. Under this Act, "stalking" means any act that would constitute the crime of stalking under La. R.S. 14:40.2[5] or cyberstalking under La. R.S. 14:40.3.[6] See La. R.S. 46:2172.
*30 Second, the injunction and protective order provisions set forth in La. R.S. 46:2181, et seq. of the Revised Statutes comprise Chapter 28-D of Title 46, known as the "Protection for Victims of Sexual Assault Act." This Act is intended to provide a civil remedy for all victims of sexual assault that will afford the victim immediate and easily accessible protection. See La. R.S. 46:2181. The provisions are limited in application to victims of sexual assault. See La. R.S. 46:2183(A). Under this Act, "victim" means a person against whom an act of attempted or perpetrated sexual assault was committed. La. R.S. 46:2187(A)(3). "Sexual assault" means any nonconsensual sexual contact and includes (but is not limited to) sex offenses as defined in La. R.S. 15:541(24),[7] or obscenity as defined in La. R.S. 14:106.[8] See La. R.S. 46:2184.
Under both Acts, victims of either stalking or sexual assault, by a perpetrator who is a stranger to or an acquaintance of the victim, shall be eligible to receive all services, benefits, and other forms of assistance provided by Chapter 28 of Title 46 of the Revised Statutes, which is the "Protection from Family Violence Act," and includes specific statutes on "Domestic Abuse Assistance" under Part II of Chapter 28 (i.e., La. R.S. 46:2131 -2143). See La. R.S. 46:2173 and La. R.S. 46:2183(A).
Pursuant to the Domestic Abuse Assistance statutes, upon good cause shown in an ex parte proceeding, the court may issue a TRO to protect a petitioner from abuse. Any petitioner who shows immediate and present danger of abuse shall constitute good cause for purposes of the statutes. See La. R.S. 46:2135(A) ; Thomas v. Hyatt, 2012-1891 (La. App. 1st Cir. 8/6/13), 2013 WL 4007777, at *2 (unpublished). The Protection from Stalking Act has no provision defining "good cause"; however, under the Protection for Victims of Sexual Assault Act, a showing that the person is or has been a victim of sexual assault shall constitute good cause for purposes of obtaining a temporary restraining order in an ex parte proceeding. See La. R.S. 46:2183(B).
If a TRO is granted without notice, the matter shall be set for a hearing within *31 twenty-one days, at which time, cause must be shown why a protective order should not be issued. At the hearing on the rule for the protective order, the petitioner must prove the allegations of abuse by a preponderance of the evidence. La. R.S. 46:2135(B).
The defendant shall be given notice of the TRO and the hearing on the rule to show cause by service of process as required by law within twenty-four hours of the issuance of the order. La. R.S. 46:2135(B). A protective order may be rendered if reasonable notice and opportunity to be heard is given to the person against whom the order is sought sufficient to protect that person's right to due process. La. R.S. 46:2136(B)(2).
Louisiana law mandates that trial courts use a uniform form for the issuance of any TRO or protective order, called the "Louisiana Uniform Abuse Prevention Order." See La. R.S. 46:2136.2(0). The trial court checks off a box provided on the uniform form to indicate under which law it issues the TRO and/or protective order: (1) La. R.S. 46:2131, et seq. (Domestic Abuse); (2) La. R.S. 46:2151 (Dating Violence); (3) La. R.S. 46:2171, et seq. (Non-intimate stalking); (4) La. R.S. 2181, et seq. (Non-intimate sexual assault); (5) La. Ch.C. art. 1564, et seq. (Children's Code Domestic Abuse); or, (6) a court approved consent agreement.
A trial court's decision to issue or deny a protective order is reversible only upon a showing of an abuse of discretion. See James v. Warren, 2017-0757 (La. App. 1st Cir. 12/21/17), 240 So.3d 967, 969 (citing Rouyea v. Rouyea, 2000-2613 (La. App. 1st Cir. 3/28/01), 808 So.2d 558, 561 ). Additionally, the trial court sitting as a trier of fact is in the best position to evaluate the demeanor of the witnesses, and its credibility determinations will not be disturbed on appeal absent manifest error. Thomas v. Hyatt, 2013 WL 4007777, at *2.
DICUSSION
Assignment of Error No. 4
To facilitate our discussion of this matter, we begin our analysis with Defendant's fourth assignment of error. Defendant argues that his due process rights were violated when the trial court granted the protective order despite his absence from the hearing. Defendant contends that he arrived at the courthouse ten minutes prior to the scheduled hearing time of 9:30 a.m. but that due to "the security check-in delay at the entrance," by the time he arrived at the courtroom, the hearing was concluded. Defendant argues that at all pertinent times, he was a pro se litigant, and that generally, if a party is called and it is determined that a party may not yet be present, the court will pass the matter and allow time for the party to arrive and take up other matters, unless, it is the only matter on the docket.
Defendant further argues that the minute entry for the hearing was amended to reflect that court began at 9:30 a.m., and not at 9:00 a.m., as originally entered. Defendant argues that the trial court committed error "when it subsequently amended the trial court minute entry reflecting a different time that the court hearings began raising reasonable suspicion enough to imply such impropriety that prejudiced the defendant's right to a hearing."
Due process requires some kind of hearing and notice thereof. Paschal v. Hazlinsky, 35,513 (La. App. 2nd Cir. 12/19/01), 803 So.2d 413, 417. In the case sub judice, we can find no support for the assertion that Defendant was not afforded due process in defending Plaintiff's claims against him. Procedural due process requires that a person be given a meaning ful *32 opportunity to be heard. Bays v. Bays, 2000-1727 (La. 2/21/01), 779 So.2d 754, 758. Parties who fail to avail themselves of the opportunities to be heard by the court, of which they admittedly were aware, may not complain that they were denied due process. Paschal v. Hazlinsky, 803 So.2d at 418.
Defendant was served with the form petition filed by Plaintiff, entitled "Petition for Protection from Stalking or Sexual Assault Pursuant to La. R.S. 46:2171 et seq. or La. R.S. 46:2181 et seq.," which gave him notice of the charges against him and informed him of the time and place of the hearing on the charges: June 28, 2017 at 9:30 a.m. in Courtroom 8A of the 19th Judicial District Court. Defendant admits in his brief to this court that he "was verbally called for the hearing and failed to respond," but that he "was present at a time when all parties remained in the court." Defendant admits he failed to appear at the hearing at the designated time and place, and offers as the only excuse or explanation for his absence that there were "security check-in delays" at the courthouse. Defendant was late for the hearing, of which he admittedly was aware, and therefore failed to avail himself of the opportunity to be heard. He cannot complain that he was denied due process.
Additionally, where there is a discrepancy between a minute entry and a transcript, the transcript prevails. Williams v. Cooper, 2005-2360 (La. App. 1st Cir. 10/6/06), 945 So.2d 48, 51. Here, the transcript of the hearing reflects that the hearing was scheduled to begin at 9:30 a.m. The amendment of the minute entry does not contradict the transcript. Furthermore, Defendant has offered no evidence of any alleged impropriety that may have occurred. Based on the foregoing, we hold that the process afforded Defendant in this case was sufficient to satisfy due process requirements of the Louisiana and U.S. Constitutions. This assignment of error is without merit.
Assignments of Error Nos. 1-3
To further facilitate our discussion, we discuss Defendant's first three assignments of error simultaneously, as they are interrelated. Defendant argues that the trial court erred in granting the protective order against him, alleging that Plaintiff failed to satisfy her burden of proof that she was entitled to a protective order issued pursuant to the Protection for Victims of Sexual Assault Act, " La. R.S. 46:2181 et seq. (Non-intimate sexual assault)." Defendant argues that Plaintiff failed to prove the allegations of the requested order of protection by a preponderance of the evidence, as is required under La. R.S. 46:2135(B).[9] Defendant further alleges that Plaintiff did not show good cause that she was entitled to an order of protection, i.e., that she did not show an immediate or present danger of abuse, nor did she prove that she was a victim of sexual assault.[10] See La. R.S. 46:2135(A), 46:2136(A)(1), 46:2183(A) and (B), and 46:2187(A)(3).
A thorough review of the record clearly reveals that Plaintiff failed to meet the threshold showing of sexual assault as defined in the Protection for Victims of Sexual Assault Act. See La. R.S. 46:2184. The evidence adduced in this case was that Defendant's employment was terminated by their mutual employer, Latter and Blum Property Management, on March 15, 2017. Plaintiff, who began working as *33 Community Team Manager of the Midcity Gardens on North Boulevard just one month prior, on February 16, 2017, became concerned that Defendant blamed her for his termination because she had raised some issues with her supervisor regarding Defendant's behavior and actions while on the job. Defendant, who had worked at this property for two years prior to Plaintiff's employment at the property, was escorted off the premises by a BRPD officer and instructed not to return, i.e., banned from the property. However, Defendant drove by and trespassed on the property on at least one occasion, April 10, 2017.[11] On June 6, 2017, a letter addressed to Defendant was sent by a third party to Plaintiff's personal residence.
Though the actions by Defendant may violate civil and criminal statutes defining stalking and afford Plaintiff protection under the Protection from Stalking Act, La. R.S. 46:2171, et seq. , Defendant's actions do not rise to the level of sexual assault as defined by La. R.S. 46:2184 in the Protection for Victims of Sexual Assault Act. Allegations that do not rise to the threshold of sexual abuse or violations of the criminal code are not in the ambit of the Protection for Victims of Sexual Assault Act. See also Thomas v. Hyatt, 2013 WL 4007777, at *3 (citing Rouyea, 808 So.2d at 561 ). At the hearing in the matter before us, Plaintiff presented no evidence that she was a victim of sexual assault. In fact, there were no allegations of sexual assault made in her verified petition. Nowhere in the record did the trial court make a finding that sexual assault occurred. The trial court only found at best that Defendant stalked Plaintiff. Accordingly, we find that the record contains insufficient evidence that Defendant's actions constituted sexual assault within the purview of Protection for Victims of Sexual Assault Act, La. R.S. 46:2181 -2188. Therefore, we conclude the trial court abused its discretion in issuing an order of protection in this case pursuant to the Protection for Victims of Sexual Assault Act, " La. R.S. 46:2181 et seq. (Non-intimate sexual assault)." We recall and vacate the June 28, 2017 protective order.
Plaintiff's verified petition, her testimony, and the orders and prohibitions contained in the June 28, 2017 protective order apply to protection against stalking. We recognize that the trial court may have inadvertently checked off the box for protection against sexual assault ("La. R.S. 2181, et seq. (Non-intimate sexual assault)") instead of the box for protection against stalking (" La. R.S. 46:2171, et seq. (Non-intimate stalking)") on the Louisiana Uniform Abuse Prevention Order form. Accordingly, we remand this matter to the trial court for further proceedings consistent with this opinion.
DECREE
The motion to supplement the record filed by the defendant, Harrison Edmond Hogan, is denied. The June 28, 2017 protective order granted by the trial court in favor of the plaintiff, Shavondra Shaketa Scott, and against the defendant, Harrison Edmond Hogan, pursuant to " La. R.S. 46:2181 et seq. (Non-intimate sexual assault)" is recalled and vacated. We remand this matter to the trial court for further proceedings consistent with this opinion. We assess all costs of this appeal equally between the parties.
MOTION TO SUPPLEMENT DENIED; PROTECTIVE ORDER RECALLED
*34 AND VACATED; REMANDED.

The box on the protective order ordering Defendant to seek professional counseling and/or complete a court-monitored domestic abuse intervention program was checked off with an "X"; however, the trial court did not initial that item.

Defendant attached to his motion the following: (1) a copy of Plaintiff's petition; (2) a copy of a BRPD Incident Report Number 17-00036527-000 dated April 10, 2017; (3) a photocopy of the mail received by Plaintiff at her residence that was addressed to Defendant; (4) a copy of the protective order rendered June 28, 2017; (5) two motions to dissolve Plaintiff's protective order (also filed June 11, 2017), both of which the trial court denied; and, (6) a copy of a verified petition for protection from stalking or sexual assault allegedly filed against Plaintiff on June 28, 2018, rebutting the allegations of Plaintiff's petition.

Louisiana Code of Civil Procedure article 1974 states: "The delay for applying for a new trial shall be seven days, exclusive of legal holidays. The delay for applying for a new trial commences to run on the day after the clerk has mailed, or the sheriff has served, the notice of judgment as required by Article 1913."

Louisiana courts look beyond the caption, style, and form of pleadings to determine from the substance of the pleadings the nature of the proceeding; thus, a pleading is construed for what it really is, not for what it is erroneously called. Rochon v. Young , 2008-1349 (La. App. 1st Cir. 2/13/09), 6 So.3d 890, 892, writ denied, 2009-0745 (La. 1/29/10), 25 So.3d 824, cert. dismissed, 560 U.S. 921, 130 S.Ct. 3325, 176 L.Ed.2d 1216 (2010).

Louisiana Revised Statutes 14:40.2(A) provides that stalking is:
[T]he intentional and repeated following or harassing of another person that would cause a reasonable person to feel alarmed or to suffer emotional distress. Stalking shall include but not be limited to the intentional and repeated uninvited presence of the perpetrator at another person's home, workplace, school, or any place which would cause a reasonable person to be alarmed, or to suffer emotional distress as a result of verbal, written, or behaviorally implied threats of death, bodily injury, sexual assault, kidnapping, or any other statutory criminal act to himself or any member of his family or any person with whom he is acquainted.

As provided in La. R.S. 14:40.3(B), cyberstalking is:
(1) Use in electronic mail or electronic communication of any words or language threatening to inflict bodily harm to any person or to such person's child, sibling, spouse, or dependent, or physical injury to the property of any person, or for the purpose of extorting money or other things of value from any person.
(2) Electronically mail or electronically communicate to another repeatedly, whether or not conversation ensues, for the purpose of threatening, terrifying, or harassing any person.
(3) Electronically mail or electronically communicate to another and to knowingly make any false statement concerning death, injury, illness, disfigurement, indecent conduct, or criminal conduct of the person electronically mailed or of any member of the person's family or household with the intent to threaten, terrify, or harass.
(4) Knowingly permit an electronic communication device under the person's control to be used for the taking of an action in Paragraph (1), (2), or (3) of this Subsection.

Louisiana Revised Statutes 15:541(24) defines a "sex offense" as the "deferred adjudication, adjudication withheld, or conviction for the perpetration or attempted perpetration of or conspiracy to commit human trafficking ..., or a second or subsequent conviction of R.S. 14:283.1 (voyeurism)" or, "aggravated oral sexual battery ...." See La. R.S. 15:541(24)(a) and (b). Under La. R.S. 14:283.1, "[v]oyeurism is the viewing, observing, spying upon, or invading the privacy of a person by looking ... through the doors, windows, or other openings of a private residence without the consent of the victim who has a reasonable expectation of privacy for the purpose of arousing or gratifying the sexual desires of the offender."

Louisiana Revised Statutes 14:106 defines "obscenity" as the intentional "[e]xposure of the genitals, pubic hair, anus, vulva, or female breast nipples in any public place open to the public view ... with the intent of arousing sexual desire or which appeals to prurient interest or is patently offensive."

Defendant's Assignment of Error No. 2.

Defendant's Assignment of Error Nos. 1 and 3.

We note that the trespass here is disputed, since it was suggested by the police that the defendant may have been on public property.